

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
Tel. (718) 263-9591 Fax. (718) 263-9598

December 29, 2020

**Via ECF**
The Honorable District Judge Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: **Alcantara-Trigueros, et al. v. Eastern Distributors 1, Inc., et al.**
     **20-CV-3038 (BMC)**

Dear Judge Cogan:

  Our office represents the Plaintiffs in the above-captioned action and submit this motion on behalf of both parties to request the Court's approval of the settlement agreement ("Settlement Agreement"), between the parties. The Settlement Agreement attached hereto as Exhibit 1 memorializes the terms agreed upon by the parties during their court-annexed mediation session on December 9, 2020.

**Settlement Terms**

  The parties reached a settlement to resolve all claims asserted in this matter for $95,000.00, which amount includes attorneys' fees (which are addressed below). The parties reached this settlement with the assistance of experienced FLSA mediator Patrick Michael McKenna, Esq. and after approximately four hours of negotiation.

**Plaintiffs' Position**

  Plaintiffs Nelson Alcantara-Trigueros ("Alcantara") and Walter Contreras ("Contreras") alleged that they were former stockers and cleaners for Eastern Distributors 1, Inc. and Edwin Marinaccio (collectively, "Defendants") for Defendants' business located at 31-33 Grand Boulevard, Brentwood, New York 11717. Plaintiffs brought this action alleging that they were not paid proper overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). As the Complaint was filed in July 2020, the relevant statutory period at issue here under the FLSA and NYLL commences in July 2014.

  Alcantara alleged that he was employed by Defendants for approximately one-and-a-half years, from in or around November 2017 until in or around May 2019. Alcantara further alleged

that during his employment, he worked approximately 45 hours per week but was paid a flat weekly salary that did not account for his 5 hours of overtime worked per week.

Contreras alleged that he was employed by Defendants from in or around 2004 until in or around December 2019. During the relevant statutory period, Contreras also alleged that he was required to work in excess of 40 hours per week but was paid a flat weekly salary that did not account for his overtime hours. After careful analysis of the time and pay records provided by Defendants as to Contreras' employment, Plaintiffs' position was that the records showed that Contreras was owed an average of approximately ten hours of overtime per week for his approximately four years and eight months of employment during the relevant statutory period.

Based on the above, Plaintiffs believed that they were owed approximately $75,000.00 in unpaid wages in addition to liquidated damages and statutory penalties under the NYLL for wage notice and wage statement violations.

Although Plaintiffs were confident that they could succeed on all of their claims at trial, their preference was a guaranteed payment through a court-approved settlement agreement. In agreeing to settle this matter, Plaintiffs considered the defenses raised by Defendants below, the records maintained by Defendants, and the timing of a payment in the near future as opposed to the uncertainty of a trial at a much later date, especially given the current backlog of civil trials caused by Covid-19.

**Defendants' Position**

Defendants maintain that they recorded Plaintiffs' hours and remitted proper wages in good faith and in compliance with the FLSA and NYLL. Defendants believe that, if Plaintiffs obtained a judgment on liability after trial, the resulting damages would be far less than the amount being paid under the negotiated settlement. Defendants have agreed to the settle Plaintiffs' claims for the negotiated settlement amount, in large part, out of recognition that the costs of continued litigation may exceed the expense of settling.

**The Settlement Agreement Terms Are Fair and Reasonable**

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (a) the plaintiffs' range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and

(e) the possibility of fraud or collusion.  The Parties submit that their settlement of Plaintiffs' FLSA claims is fair and reasonable based on the *Wolinsky* factors.

Here, as an initial matter, the resolution reached by the Parties was a settlement of disputed claims.  The Parties agree that there was a *bona fide* dispute as to whether Plaintiffs could prevail on the merits of their FLSA and NYLL claims and that the amount being paid to Plaintiffs, as indicated in the Settlement Agreement, is a fair and reasonable resolution to this *bona fide* dispute.

### A. Range of Possible Recovery and Anticipated Burdens/Expenses of Further Litigation and Serious of Litigation Risks

Although Plaintiffs initially claimed $75,000.00 in unpaid wages owed, in addition to liquidated damages and statutory penalties, Plaintiffs recognized the serious risks of further litigation and proceeding to trial, including establishing their claims for unpaid overtime wages and overcoming the burdens of Defendants' record keeping.

Defendants recognized that litigation can be uncertain and there is no guarantee they would have prevailed had this matter proceeded to summary judgment or trial.  They also recognized that the cost of litigating this issue could have exceeded the amount in dispute.  Consequently, Defendants believe this is a fair settlement that takes into account the merits of each party's position and the risks inherent in litigating the case.

In light of the above, Plaintiffs' recovery of $95,000.00 is squarely in the range of possible recovery and reasonable based on the facts of this case.

### B. Arm's-Length Bargaining, No Fraud or Collusion and Approved Post-*Cheeks* Settlement Terms

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the FLSA claims, the settlement negotiations took place over the course of approximately three months.  Counsel for the Parties argued their respective positions and negotiated in good faith until a resolution was reached.  There was thus no fraud or collusion here.  No party asserts any evidence of fraud or collusion regarding Claimant's settlement.  Because there is no evidence of fraud or collusion here, it is presumed that no fraud or collusion exists. *See Chavarria v. New York Airport Serv., LLC*, 875 F. Supp. 2d 164, 173 (E.D.N.Y. 2012) (citing *In re Warner Communications Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986)).

Furthermore, this Settlement Agreement was only achieved with the assistance an experienced and qualified neutral appointed by the parties through the Court-annexed mediation.  The parties held their Court-annexed mediation on December 9, 2020 with all parties present and agreeing to the terms contained in the Settlement Agreement.

Here, the release in paragraph 2€ of the Settlement Agreement ("Release") is narrowly-tailored to the claims asserted in the Complaint and other related claims. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

Lastly, the parties have included a mutual non-disparagement provision that includes a carve-out provision allowing Plaintiff to make truthful statements about his experience in this litigation. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiff's rights under the FLSA, and Defendants interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case.") ; *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc.*, No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

### **Plaintiffs' Recovery and Requested Attorneys' Fees**

The parties agreed to settle all claims asserted in this matter for $95,000.00 in three installments. The parties believe that this amount is reasonable in light of Plaintiffs' claims and the defenses and records maintained by Defendants and the fact that this settlement was carefully negotiated through the assistance of an experienced and qualified FLSA and NYLL mediator.

Plaintiffs will recover $62,782.00 after attorneys' fees and expenses pursuant to the Agreement and in accordance with their retainer agreement with Plaintiffs' counsel. Plaintiffs' counsel respectfully requests one-third of the net settlement amount (after expenses have been deducted), consistent with the fee arrangement regularly approved by this Court. Each Plaintiff will receive an amount based on Plaintiffs' counsel's individualized calculations of damages, which account for length of employment, rate of pay and number of overtime hours worked. Each Plaintiff's allocation also takes into account Plaintiffs' counsel's analysis of the time and pay records provided by Defendants.

Additionally, Plaintiffs' counsel respectfully requests reimbursement of $828.00, for identifiable expenses, which include the Eastern District of New York filing fee ($400.00) and the costs of serving Defendants through their process server, PM Legal LLC ($128.00), and the cost of the court-annexed mediation program ($300.00).

Therefore, the total amount to be paid to Plaintiff's counsel, including reimbursement of expenses, is $32,218.00.

**Settlement Amount:** $95,000.00
**Attorneys' Expenses:** $828.00
**Settlement less Expenses:** $94,172.00
**Requested Attorneys' Fees:** $31,390.00 ($94,172.00 / 3)
**Total payable to Attorneys:** $32,218.00 ($31,390.00 + $828.00)
**Total payable to Plaintiff Alcantara-Trigueros:** $15,000.00
**Total payable to Plaintiff Contreras:** $47,782.00

Plaintiffs' counsel and their clients have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has zealously advocated for their clients throughout the litigation process and believes that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

In closing, the parties respectfully submit that the Agreement is fair and reasonable, and therefore request that the Court approve or so order the Agreement.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.
*Attorney for Plaintiffs*